IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL CASE NO. |
| | : | 1:21-cr-109-AT |
| GEE-KUNK CHANG, | : | |
| Defendant. | : | |

## **ORDER**

Defendant Gee-Kunk Chang was indicted for conspiring to commit visa fraud, conspiring to commit wire fraud, and wire fraud. (Doc. 1). He now argues that the affidavit supporting the search warrant that authorized the search of his Georgia Institute of Technology ("Georgia Tech") email account omitted material information about the credibility of a confidential source it cited, and that the inclusion of that information would have prevented a finding of probable cause. He therefore asks the Court to suppress the fruits of that search or, in the alternative, to order a *Franks* hearing. [Doc. 72].

Magistrate Judge Anand's Final Report and Recommendation ("R&R"), [Doc. 98], recommends the denial of Chang's Motion. Chang filed timely objections to the R&R. [Doc. 105].

After conducting an independent *de novo* review of the record, the Court concludes that the R&R properly recommends that the Motion be denied. Thus, the Court **OVERRULES** Defendant's objections, [Doc. 105], **ADOPTS AS AMENDED HEREIN** the Magistrate Judge's R&R, [Doc. 98], and **DENIES** Defendant's Amended Motion to Suppress or, in the Alternative, for a *Franks* Hearing, [Doc. 72].[1]

I.  **BACKGROUND**

During the time period relevant to the Indictment, Chang was a professor at Georgia Tech's School of Electrical and Computer Engineering. On March 26, 2018, Chang was alerted that a student in his research group sent a series of threating messages to other students, which contained racial epithets against Chinese students and communicated a desire to "blow off [their] heads" with a gun. *See* (Doc.105-1 at 4). The incident was reported to the Georgia Tech Police Department ("GTPD"). GTPD interviewed the student, who explained that the messages were "a joke" and taken out of context. *See* (*id.* at 5). The next day, Chang told GTPD that he was concerned about the student's mental stability, and that the student had been known to lash out at students visiting from China. *See* (*id.* at 7). Although the student did not ultimately face criminal charges, Chang gave him a failing grade for the semester, and he was suspended and temporarily banned from the Georgia Tech campus, before being allowed to return on academic probation.

---

[1] Chang's original Motion to Suppress or, in the Alternative, for a *Franks* Hearing, [Doc. 54], is **DENIED** as moot.

In early August 2018, the student began sending Chang hostile emails. *See* (Docs. 105-2, 105-3, 105-4). In response, Chang removed the student from his research group and ceased serving as his academic advisor.

On September 6, 2018, the student created an email address under a fake name and contacted the National Science Foundation. He claimed that there were graduate students visiting Georgia Tech under J-1 visas who "did not come to [the] university to join or to cooperate with the ongoing projects in [the] university," and that their research-based visa arrangements seemed "suspicious." *See* (Doc. 105-5 at 3–4). On September 25, Special Agents Richard Hernandez and Jerome Terry of the Federal Bureau of Investigation interviewed the student, who the Government refers to as their "Confidential Human Source" or "CHS." *See* (Doc. 105-6). CHS told the agents that Chang was his academic advisor for three years and that he had been in Chang's research group, but following a heated argument with Chang, he was removed from the research group and reported to Georgia Tech. *See* (*id.* at 2). CHS claimed that, as a result, he was suspended from Georgia Tech for several months, placed on academic probation, and assigned a new advisor. (*Id.*).

In subsequent conversations with the FBI, it became apparent that CHS had not been entirely truthful about his suspension from Georgia Tech and the nature of his relationship with Chang. Among other revisions, CHS admitted that he was actually suspended from Georgia Tech following threatening and racist messages

that he sent to other students, that Chang was the one to report him to GTPD, and that Chang gave him a failing grade for the semester. *See* (Docs. 109-1, 109-2).

When the Government sought a search warrant for the contents of Chang's Georgia Tech email account in December 2018, it submitted an affidavit that relied, in part, on information gleaned from CHS, but it did not include information regarding CHS's biases, past bad acts, suspension from Georgia Teach, or negative relationship with Chang. The affidavit states that CHS informed the FBI that Chang was working to send J-1 visa holders from Chinese universities to work at ZTE USA in New Jersey. (Doc. 72-5 ¶¶ 7,9). Chang would allegedly sponsor the J-1 visitors so they could obtain visas to perform research at Georgia Tech's Atlanta campus, while they actually were actually working at ZTE. *See* (*id.*). The affidavit also cited statements from CHS that reflected his understanding that three specific J-1 visitors were working at ZTE and not Georgia Tech. *See* (*id.* at ¶¶ 17, 27, 34).

The Magistrate Judge ultimately found that there was probable cause and signed off on the search warrant, which was later executed. In March 2021, Chang was indicted for conspiring to commit visa fraud, conspiring to commit wire fraud, and wire fraud. (Doc. 1).

In his Motion, Chang argues that the affidavit supporting the search warrant omitted material information about CHS's credibility—namely, that CHS (1) was motivated by revenge towards Chang, (2) was mentally unstable and had discussed shooting fellow students, (3) was racially biased against Chinese people, and (4) had previously lied to the FBI about the nature of his dismissal from Chang's

research group. *See* [Doc. 72 at 12–13]. He claims that had this information been included, it would have defeated probable cause. In response, the Government contends that (1) Chang lacks standing to challenge the validity of the search warrant because he did not have a reasonable expectation of privacy in his Georgia Tech email account; (2) Chang fails to show that any material information that would have defeated probable cause was intentionally or recklessly omitted from the affidavit; and (3) the good-faith exception applies. (Doc. 74).

**II.    THE R&R'S CONCLUSIONS AND CHANG'S OBJECTIONS**

The R&R recommends the denial of Chang's Motion. First, it finds that Chang lacks standing to challenge the search under the Fourth Amendment because he did not have an objectively reasonable expectation of privacy in his Georgia Tech email account. In reaching this conclusion, the R&R notes that there are two documents relevant to whether Chang had an objective expectation of privacy: (1) Georgia Tech's Data Privacy Policy and (2) the Terms of Use that appear when employees log into certain Georgia Tech applications, including their Georgia Tech email accounts. Although the two documents potentially contradict each other—the Data Privacy Policy states that Georgia Tech has an "obligation not to infringe upon the reasonable privacy expectations of its employees . . . in their electronic communications and data," (Doc. 74-2 at 2), whereas the Terms of Use state that computer system users "have no expectation of privacy," (Doc. 92-2 at 2)—the R&R concludes that the terms of the Terms of Use should control because "there is only evidence that [Chang] would have necessarily seen the Login Page,"

5

and none that he saw, relied on, or was aware of the Data Privacy Policy. *See* [Doc. 98 at 14].

Next, the R&R concludes that even if Chang had standing to challenge the search warrant, his Motion still fails because the inclusion of omitted information about CHS's biases and prior bad acts in the affidavit would not have prevented a finding of probable cause. While the omitted information may have led the Magistrate Judge to view information attributed to CHS with greater caution, the R&R notes that "substantial corroborating information set forth in the remainder of the Affidavit" would have "lent sufficient reliability to the CHS's statements" and supported a finding of probable cause. *See* [*id.* at 21]. The R&R thus recommends denying Chang's Motion.

Chang objected to the R&R, contending that (1) he had has standing to challenge the validity of the search warrant because he had a reasonable expectation of privacy in his Georgia Tech email; (2) that suppression of the fruits of the search is warranted because the omitted information would have defeated probable cause, and the omission was reckless; and (3) at minimum, a *Franks* hearing is needed to determine what the Government knew regarding the confidential source's reliability and potential bias when the affidavit was submitted. [Doc. 105]. This review followed.

**III.   STANDARD OF REVIEW**

The Federal Magistrates Act[2] and Rule 72 of the Federal Rules of Civil Procedure divide pretrial matters assigned to magistrate judges into two categories: dispositive or non-dispositive. Different standards of review apply to each category.

Where, as here, timely objections are made to a magistrate judge's order on a dispositive pretrial matter—such as a motion to suppress evidence in a criminal case—a district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *See United States v. Raddatz*, 447 U.S. 667, 680 (1980); *Robertson v. All Am. Quality Foods, Inc.*, 246 F. Supp. 3d 1365, 1371 (N.D. Ga. 2017). The court reviews any portion of the R&R that is the subject of a proper objection *de novo* and any non-objected portion under the "clearly erroneous" standard. *See Robertson*, 246 F. Supp. 3d at 1371; *see also* Fed. R. Civ. P. 72, Advisory Committee Note to 1983 Addition ("The term 'de novo' signifies that the magistrate's findings are not protected by the clearly erroneous doctrine . . . .").

**IV.   DISCUSSION**

**A. Standing**

An individual may only challenge the validity of a government search if he has a reasonable expectation of privacy in the place search or items seized. *See United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007); *Smith v. City of*

---

[2] *See* 28 U.S.C. § 636(b)(1).

*Pelham*, No. 20-13210, 2021 WL 5863412, at *3 (11th Cir. Dec. 10, 2021) (unpublished). This requires the party alleging an unconstitutional search to "establish both a subjective and an objective expectation of privacy." *United States v. Segura–Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." *Id.* (citation omitted).

In the workplace, the Supreme Court "has recognized that employees may have a reasonable expectation of privacy against intrusions by police." *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) (plurality opinion). This is true for both public- and private-sector employees. *See id.* at 717. But "[p]ublic employees' expectations of privacy . . . , like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.*; *see also City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010) ("[E]mployer policies concerning communications will of course shape the reasonable expectations of their employees, especially to the extent that such policies are clearly communicated.").

Here, the Court is satisfied that Chang exhibited a subjective expectation of privacy in his Georgia Tech email account. *See Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010). He submitted an affidavit and documentation reflecting his use of the account to send sensitive correspondence regarding tax preparation, the signing of a deed in a property transaction, as well as for personal messages with

8

friends and family. *See* (Decl. of Gee-Kunk Chang, Doc. 84 & Exhibits A–F). Given that one does not ordinarily send personal tax and financial information by a means that one does not expect to be private, it is sufficiently apparent that Chang understood his Georgia Tech emails to be private. To the extent the R&R disagrees, it is overruled.[3]

Whether Chang's expectation of privacy is one that society is prepared to recognize as objectively reasonable is a closer question. Although the parties seem to agree that Georgia Tech's written policies resolve this question, they disagree as to their application. Chang relies on a portion of Georgia Tech's Data Privacy Policy, which states that Georgia Tech "recognizes its obligation to not infringe upon the reasonable privacy expectations of its employees and students in their electronic communications and data." (Doc. 74-2 at 2). Among other arguments, the Government counters that the Terms of Use that appear when employees log into certain Georgia Tech cloud services, including their email accounts, state that users "should have no expectation of privacy." (Doc. 92-2 at 1).

The Court appreciates that much ink has been spilled on this issue and that it was discussed at length during a December 2022 Evidentiary Hearing. (Doc. 90). The R&R makes a valiant effort to wrestle with the potentially conflicting terms and policies, as well as other record evidence weighing on the reasonableness of

---

[3] Chang's objections to the R&R indicate that he interprets the R&R as concluding that he did not exhibit a subjective expectation of privacy in his Georgia Teach email account. However, the Court does not read the R&R as reaching that conclusion. Regardless, the Court is satisfied that that subjective component of the Fourth Amendment standing analysis is satisfied.

Chang's privacy expectation. However, courts must proceed carefully in considering an employee's Fourth Amendment privacy expectations in electronic communications made through means provided by a government employer. *See Quon*, 560 U.S. at 759. Where, as here, the record evidence does not clearly indicate whether such communications were private, the prudent course may be to "dispose [the] case on narrower grounds." *See id.* at 760.[4] Such a resolution is appropriate here.

As discussed below, even if even if Chang had standing to challenge the search warrant, his Motion fails because the inclusion of the omitted information in the affidavit would not have prevented a finding of probable cause. Accordingly, the Court assumes, without deciding, that Chang had an objectively reasonable expectation of privacy in his Georgia Tech email account, and that he therefore has standing to challenge the search. *See id.*

**B. Suppression**

The Court agrees that it would have been preferable for the Government to include in the affidavit relevant information about CHS's biases, past bad acts, and his negative relationship with Chang. But because the inclusion of the omitted

---

[4] *Quon* concerned the privacy expectations of a government employee in the text messages on his government-issued pager. There, the Supreme Court declined to decide the issue of the defendant's Fourth Amendment standing because potential inconsistencies between the city's policies and official statements did not "[make] it clear that pager messages were not considered private." *See* 560 U.S. at 758. Based on that record, the Supreme Court elected not to decide the standing question because, even if the defendant had an expectation of privacy in the text messages, there was not a Fourth Amendment violation. *See id.* at 760.

information would not have prevented a finding of probable cause, Chang is not entitled to a *Franks* hearing or the suppression of the fruits of the search.

Affidavits supporting a search warrant application are afforded "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). But a defendant is entitled to a *Franks* hearing if he "'makes a substantial preliminary showing' that an affiant made intentionally false or recklessly misleading statements (or omissions), and those statements are 'necessary to the finding of probable cause.'" *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014) (quoting *Franks*, 438 U.S. at 155–56). "The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking." *Barsoum*, 763 F.3d at 1329 (citation omitted). Only if this preliminary showing is made is a defendant entitled to a *Franks* hearing. *Id.* at 1328. Ultimately, "[e]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009) (citation omitted).

Here, the R&R concludes that while the inclusion of the omitted information may have led the Magistrate Judge to view information attributed to CHS with greater skepticism, corroborating information set forth in the rest of the affidavit "lent sufficient reliability to the CHS's statements" and supported a finding of probable cause. *See* [Doc. 98 at 21].

Chang disagrees. He argues that "[w]hile independent sources of information verified *some* allegations from the CHS . . . no independent source corroborated the *most important allegation* and the one necessary for probable cause to seize Professor Chang's email account: that Professor Chang engaged in any wrongdoing." [Doc. 105 at 20–21] (emphasis original). Specifically, Chang asserts that "without the CHS's representations that Professor Chang was 'working with Jianjun YU to send J-1 Exchange Visitors . . . from Chinese universities to work at [ZTE]' or that 'YU uses his relationship with CHANG to request that CHANG sponsor certain Chinese researchers to enter the United States via the J-1 EV program,' allegations which were **not** corroborated, nothing in the Affidavit ties Professor Chang to a conspiracy to induce the J-1 visitors to lie about their location." [*Id.* at 21–22] (alternations and emphasis original). Chang concludes that without these two representations, probable cause to search his email account did not exist. The Court is not persuaded.

Despite Chang's claim, the validity of the search warrant does not turn on whether there was probable cause to conclude that *Chang himself* was engaged in criminal activity. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 560 (1978) (holding that courts may not prohibit the issuance of a search warrant "simply because the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement"). Instead, the relevant query was whether the affidavit contained facts sufficient to conclude that "a fair probability existed that seizable evidence would be found in the place sought to be searched"—here, Chang's email

account. *See United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted).

Ultimately, CHS is only cited in seven of the 41 paragraphs constituting the "Probable Cause" section of the search warrant affidavit. *See* Doc. 72-5 ¶¶ 6, 7, 9, 10, 17, 27, 34). When the affidavit is reviewed as a whole, it is clear that even if information attributed to CHS is omitted, numerous independent sources establish probable cause that evidence of criminal activity may be found in Chang's Georgia Tech email account. Among other information, the non-CHS portions of the affidavit state:

- Chang was the director of Georgia Tech's Center for Fiber-Wireless Integration Networking ("FiWIN"). (*Id.* at ¶ 6).

- Chang sponsored a number of J-1 visa visitors from Chinese universities to work at Georgia Tech. *See* (*id.* at ¶ 11).

- With few limited exceptions, J-1 visa holders are only permitted to perform work at the "Site of Activity" listed on the visa application during their stay in the United States. If the visa holder's Site of Activity changes during their time in the United States, the visa holder must notify the U.S. government. *See* (*id.*).

- The Chang-sponsored J-1 visitors listed Georgia Tech as the Site of Activity on their visa applications. *See* (*id.*).

- The FBI's investigation concluded that certain Chang-sponsored J-1 visitors were working at ZTE's New Jersey facility during their visa terms, although Georgia Tech was listed as their Site of Activity. *See* (*id.*).

- A variety of corroborating information supports this conclusion, including that: during their visa terms, certain J-1 visitors had New Jersey driver's licenses, vehicles registered in New Jersey, and residences close to ZTE's New Jersey facility; Georgia Tech building access records do not reflect that those

- J-1 visitors were accessing the relevant Georgia Tech facilities as expected during their visa terms; and those J-1 visitors noted their affiliation with ZTE when publishing research and filing for patents during their visa terms. *See* (*id.* at ¶¶ 18–23, 28–30, 35–38, 40–42).

- As part of sponsoring the J-1 visitors, Chang submitted Requests to Host Foreign Visitor or Guest to Georgia Tech, and the Requests indicated that the J-1 visitors would be working at FiWIN. *See* (*id.* at ¶¶ 13, 25, 32).

- Documents collected from Georgia Tech reflect that Chang used his Georgia Tech email account to communicate with other Georgia Tech officials regarding the J-1 visitors that he sponsored. *See* (*id.* at ¶ 43). This included sending "Annual Reviews" in which he represented to university officials that there had been no changes to the status of certain J-1 visitors who were supposedly conducting research at Georgia Tech, even though at the time the emails were sent the individuals were working at ZTE in New Jersey. *See* (*id.*).

Based on the foregoing, the Court finds that even if the omitted information about CHS's biases and past bad acts were included—and such information led the Magistrate Judge to entirely disregard the information attributed to CHS—the remaining portions of the affidavit provided probable cause to conclude that evidence of criminal activity would be found in Chang's Georgia Tech email account. Specifically, independent corroborating information provided probable cause to conclude that there was a conspiracy to fraudulently obtain J-1 visas for foreign nationals to work at ZTE, and that there was "a fair probability" that evidence of this criminal conduct would be found in Chang's email account. *See Martin*, 297 F.3d at 1314 (citation omitted).

## V.     Conclusion

Accordingly, the Court **OVERRULES** Defendant's objections, [Doc. 105], **ADOPTS** the Magistrate Judge's R&R, [Doc. 98], and **DENIES** Defendant's Motion to Suppress or, in the Alternative, for a *Franks* Hearing, [Doc. 72].

**IT IS SO ORDERED** this 1st day of March, 2024.

_____
**Honorable Amy Totenberg**
**United States District Judge**